# SEALED

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

FILED BY _KO_ D.C.

OCT 13 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

SEALED

PLAINTIFFS,

V.

SEALED

DEFENDANTS.

<u>COMPLAINT AND JURY DEMAND</u>

# TO BE FILED UNDER SEAL
# PURSUANT TO 31 U.S.C. § 3730(B)(2)

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and the STATES OF FLORIDA, TEXAS, NEVADA, NEW JERSEY, NEW YORK, NEW MEXICO, ILLINOIS, CALIFORNIA, and THE TERRITORY OF PUERTO RICO, *ex rel.* JOSEPH STINSON, | ) ) ) ) ) ) ) ) | Case No._____ |
| | ) | COMPLAINT AND JURY DEMAND |
| | ) | |
| **Plaintiffs/Relator,** | ) | TO BE FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) |
| -v- | ) ) | |
| | ) | |
| CANO HEALTH, INC; CANO HEALTH, LLC; CANO PHARMACY, LLC; COMFORT PHARMACY 2, LLC; CANO HEALTH OF FLORIDA, LLC; CANO HEALTH NEW MEXICO, LLC; CANO HEALTH NEVADA NETWORK, LLC; CANO HEALTH CA 1, LLC; CANO HEALTH CALIFORNIA, PC; CANO HEALTH CALIFORNIA NETWORK, LP; CANO HEALTH TEXAS NETWORK; CANO BELEN, LLC; CANO HEALTH OF PUERTO RICO LLC; and JOHN DOE ENTITIES 1–10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiff-Relator Joseph Stinson ("Relator" or "Mr. Stinson"), by and through the undersigned counsel, and on behalf of the United States of America ("United States") and the States of Florida, Texas, Nevada, New Jersey, New York, New Mexico, Illinois, California, and the Territory of Puerto Rico (the "States") (collectively, the "Government"), hereby alleges as follows:

## I.   INTRODUCTION

1.      This is a *qui tam* action, brought by Mr. Stinson on his own behalf and on behalf of the Government, against Cano Health, Inc., Cano Health, LLC; Cano Pharmacy, LLC; Comfort Pharmacy 2, LLC; Cano Health of Florida, LLC; Cano Health New Mexico, LLC; Cano Health

1

Nevada Network, LLC; Cano Health CA 1, LLC; Cano Health California, PC; Cano Health California Network, LP; Cano Health Texas Network; Cano Belen, LLC; Cano Health of Puerto Rico LLC; and John Doe Entities 1-10 (all defendants together, "Defendants," or "Cano Health") for using, making, presenting, and causing to make, use, or present false claims to the Government in violation of the False Claims Act, 31 U.S.C. § 3729, *et seq.* and state law equivalents (together, the "False Claims Act").

2.      Mr. Stinson is President/CEO of Stinson Group LLC ("Stinson Group"), a field marketing organization ("FMO") that offers insurance products and services to insurance agents and agencies.  Stinson Group partners with elite agents and quality carriers to bring premier healthcare products to those in need.  In the most basic sense, Stinson Group contracts with health insurance carriers to market and sell a variety of insurance products, including Medicare Advantage ("MA") plans, to individual clients, through a network of independent marketing/sales agents.

3.      Cano Health, Inc. is a public corporation listed on the New York Stock Exchange with the symbol: CANO.  Cano Health is a large provider of senior-focused primary care facilities in the United States, with approximately 390,000 members, and has center locations across nine states and Puerto Rico."[1]  Cano Health's business model targets seniors who are part of the Medicare Advantage Program.  Upon information and belief, the Defendants operated together as Cano Health.

---

[1] *See, e.g., Cano Health Announces Financial Results for the First Quarter 2023*, available at https://canohealth.com/news/cano-health-announces-financial-results-for-the-first-quarter-2023/#:~:text=About%20Cano%20Health&text=Founded%20in%202009%2C%20Cano%20Health,or%20investors.canohealth.com.&text=Cano%20Health%2C%20Inc.,-(786)%20206%2D (last visited June 14, 2023).  Cano Health lists on its website that it operates in Florida, California, Illinois, Nevada, New Mexico, and Texas. *See* https://canohealth.com/locations/ (last visited July 25, 2023).

4.      The fraud alleged herein is straightforward. Cano Health has implemented various illegal kickback and inducement schemes in order to solicit referrals and increase enrollments of Medicare/Medicaid beneficiaries at Cano Health—resulting in the Government paying for healthcare services that are tainted by these illegal kickbacks and inducements.  In particular, and as more fully outlined herein (*see infra* Section VI), since at least May 2023 and, upon information and belief, since as early as 2017, Cano Health has defrauded the Government by:

    (a)   engaging in illegal kickback arrangements with third party marketing/sales agents and entities (*i.e.*, the John Doe Entities)—providing them cash and commission payments in exchange for referring their Medicare/Medicaid beneficiaries to enroll at Cano Health;

    (b)   improperly advertising, offering, and providing free transportation to Medicare/Medicaid beneficiaries to illegally induce them to enroll at Cano Health; and

    (c)   improperly advertising, offering, and providing free medical services and other services such as labs and X-ray to Medicare/Medicaid beneficiaries to illegally induce them to enroll at Cano Health.

5.      Federal law explicitly prohibits healthcare providers (such as Cano Health) from offering and providing anything of value (*i.e.*, remuneration) to induce referrals, as well as from offering and providing free services (such as free transportation) to induce Medicare/Medicaid beneficiaries to receive healthcare services payable by a federal healthcare program.  *E.g.*, 42 U.S.C. § 1320a-7b (Anti-Kickback Statute ("AKS"): prohibiting offering or providing remuneration for the purpose of inducing any person to refer services payable government healthcare program); 42 U.S.C. § 1320a-7a (Anti-Inducement Statute: prohibiting offering or providing remuneration for the purpose of influencing recipients to receive care from a particular provider); OIG Advisory Opinion No. 07-02; *see* HHS OIG Advisory Opinion No. 00-7 ("Healthcare providers that offer free goods or services, such as free transportation, to federal healthcare beneficiaries may be subject to civil monetary penalties [under the Anti-Inducement

Act]. . . . Moreover, free transportation services may implicate the criminal [A]nti-[K]ickback [S]tatute . . . .").

6.      Cano Health is well-aware of these explicit prohibitions; indeed, Cano Health's own corporate SEC filings contain explanations of the statutes.

> If any of our operations or those of our affiliated physicians are found to violate applicable laws, rules or regulations, we could suffer severe consequences . . . criminal or civil liability, fines, damages . . . exclusion from participating in federal and state healthcare programs and/or monetary penalties for violations of healthcare fraud and abuse laws, including, but not limited to, **the federal Anti-Kickback Statute,** Civil Monetary Penalties Law of the Social Security Act (the "CMP Statute"), the federal physician self-referral law, commonly referred to as the Stark Law, the False Claims Act (the "FCA"), and/or state analogs to these federal enforcement authorities, or other regulatory requirements . . . .].

Form 10K dated March 15, 2023 (emphasis added).

7.      Cano Health is well aware of the explicit requirements on pharmacies; indeed, Cano Health's own corporate SEC filings[2] contain explanations.

> **Our various pharmacy facilities** also maintain certain Medicare and state Medicaid provider numbers as pharmacies providing services under these programs.  Participation in these programs requires our pharmacies to **comply with the applicable Medicare and Medicaid provider rules** and regulations, and exposes the pharmacies to various changes the federal and state governments may impose regarding reimbursement methodologies and amounts to be paid to participating providers under these programs.  In addition, several of our pharmacy facilities are **participating providers under Medicare Part D** and, as a condition to becoming a participating provider under Medicare Part D, the pharmacies are required to adhere to certain requirements applicable to Medicare Part D.

(Emphasis added.)

8.      Despite these clear prohibitions, Cano Health nevertheless knowingly and purposefully implemented the fraudulent practices alleged herein, designed to target, induce, and

---

[2] https://www.sec.gov/Archives/edgar/data/1800682/000180068222000010/cano-20211231.htm (last visited June 14, 2023)

exploit vulnerable Medicare/Medicaid beneficiaries (many of whom are elderly, disabled, and low-income)—all to illegally increase patient enrollments at Cano Health at the expense of the Government.

9.      Mr. Stinson discovered the fraud after contacting Cano Health via LinkedIn to explore a potential partnership between the Stinson Group's network of agents and Cano Health. Cano Health followed up with Mr. Stinson.   During those communications, Cano Health solicited Stinson Group to participate in the fraudulent scheme.  Mr. Stinson immediately recognized the conduct as fraudulent and illegal, declined to conduct business with Cano Health, and took immediate action to report the fraud to the Government.

10.     The damages incurred by the Government as a result of Cano Health's fraudulent scheme are substantial.   Because Cano Health improperly procured and enrolled Medicare/Medicaid beneficiaries as patients using the illegal kickback and inducement schemes described herein, all services and care provided to those patients are tainted and not lawfully payable by the Government.   Therefore, a significant portion of Cano Health's Medicare/Medicaid revenue from 2017 to the present is tainted as a result of the illegal kickback and inducements schemes. For reference, Cano Health's estimated annual revenue was $2.7 billion in 2022.[3]  Much of this revenue, from 2017 to the present, is at issue in this FCA case. Upon information and belief, the fraud continues still today—and will no doubt continue to grow in scope as Cano Health continues to grow and open more new centers throughout the country.

11.     Under the terms of the False Claims Act, this *qui tam* Complaint is to be filed *in camera* and under seal and is to remain under seal for a period of at least sixty (60) days and shall not be served on Defendants until the Court so orders.   The Government may elect to intervene

---

[3] https://canohealth.com/news/press-releases/cano-health-announces-financial-results-for-the-fourth-quarter-and-full-year-2022/ (last visited June 14, 2023).

and proceed with the action within the 60-day time frame, or within any extensions of that initial sixty-day period granted by the Court for good cause shown, after it receives both the Complaint and the material evidence submitted to it.

## II.    NATURE OF THE ACTION

10.    This is an action to recover treble damages and civil penalties arising from the fraudulent conduct of Defendants for using, making, presenting, and causing to make, use, or present false statements and claims to the Government in violation of the False Claims Act, 31 U.S.C. § 3729, *et seq.* and applicable state law.

11.    Under the False Claims Act, a private person may bring an action in federal district court for itself and for the United States, and may share in any recovery.   31 U.S.C. § 3730(b). That private person is known as a "Relator" and the action that the Relator brings is called a *qui tam* action. ⸱ The relevant state law FCA equivalents are to similar effect.

## III.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction to adjudicate this action under 28 U.S.C. §§ 1331, 1345.

13.   ⸱  This Court has personal jurisdiction over Cano Health pursuant to 31 U.S.C. § 3732(a) because Cano Health transacts business in the State of Illinois and in this District.

14.    Venue is proper in this District under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c) because Cano Health can be found and transacts business in this District.

## IV.    THE PARTIES

15.    Mr. Stinson brings this action on behalf of the United States, including its agency, the Department of Health and Human Services ("HHS"), its component, the Centers for Medicare & Medicaid Services ("CMS," formerly the Health Care Financing Administration ("HCFA")),

6

and all other government healthcare programs, such as Medicaid, TRICARE/CHAMPUS, Blue Cross/Blue Shield – CHIP, and Veterans Administration ("VA") and all other government programs, including Medicaid, Medicare Part B, and Medicare Part C (Medicare Advantage), (collectively, "Medicare").

16.    Mr. Stinson also brings this action on behalf of the States of Florida, Texas, Nevada, New Jersey, New York, New Mexico, Illinois, California, and the Territory of Puerto Rico, including all state counterpart agencies to the federal agencies referenced above (collectively, "Medicaid").

17.    Mr. Stinson also brings this action on behalf of himself, as permitted under the False Claims Act. Mr. Stinson is a Michigan resident who discovered the fraud after Mr. Stinson contacted Cano Health via LinkedIn to explore a potential partnership between the Stinson Group's network of agents and Cano Health. Mr. Stinson has direct and independent knowledge of the information on which the allegations set forth in this Complaint are based, is the original source of these allegations, and has knowledge of the false claims and records that Cano Health knowingly, falsely, and fraudulently submitted to the Government as alleged herein.

18.    Cano Health, Inc. is Delaware corporation with its principal place of business located at 9725 NW 117th Avenue, Miami, Florida 33178. "On June 3, 2021, Jaws consummated a merger with Primary Care (ITC) Intermediate Holdings, LLC, following which it changed its name to Cano Health, Inc. and began providing primary care medical services." *Gonzalez v. Cano Health*, Inc., No. 22-20827-CIV-WILLIAMS/MCALILEY, 2022 U.S. Dist. LEXIS 238706 (S.D. Fla. Dec. 22, 2022). As of December 31, 2021, Cano Health operated in Florida, Texas, Nevada, New Jersey, New York, New Mexico, Illinois, California and Puerto Rico.[4] As of December 31,

---

[4] https://www.sec.gov/Archives/edgar/data/1800682/000180068222000010/cano-20211231.htm (last visited June 14, 2023)

2022, Cano Health operated in Florida, Texas, Nevada, New Mexico, Illinois, and California.

19.     Cano Health, LLC is a Florida limited liability company with its principal place of business located at 9725 NW 117th Ave., Suite 200, Miami, Florida 33178. Cano Health, LLC was formed in 2009.

20.     Cano Pharmacy, LLC is a Florida limited liability company with its principal place of business located at 8300 W. Flagler Street, Suite 165, Miami, Florida 33144. The name of the entity was previously Comfort Pharmacy, LLC which was formed in 2010. The entity filed a name change on 10/30/2018.

21.     Comfort Pharmacy 2, LLC is a Florida limited liability company with its principal place of business located at 8300 W. Flagler Street, Suite 165, Miami, Florida 33144. Comfort Pharmacy 2, LLC was formed in 2015.

22.     Cano Health of Florida, LLC is a Florida limited liability company with its principal place of business located at 9725 NW 117th Ave. Suite 200, Miami, Florida 33178. The name of the entity was previously Physicians Partners Group of Florida, LLC which was formed in 2017. The entity filed a name change on 8/24/2017.

23.     Cano Health New Mexico, LLC is a New Mexico limited liability company with its principal place of business located at 9725 NW 117th Ave. Suite 200, Miami, Florida 33178. Cano Health New Mexico, LLC was Formed in 2021.

24.     Cano Health Nevada Network, LLC is a Florida limited liability company with its principal place of business located at 9725 NW 117th Ave., Suite 200, Miami, Florida 33178. Cano Health Nevada, LLC was formed in 2022.

25.     Cano Health CA 1, LLC is a California limited liability company with its principal place of business located at 7705 Seville Avenue, Suite C, Huntington Park, California

90255. Cano Health CA 1, LLC was formed in 2021.

26.     Cano Health California, PC is a California professional corporation with its principal place of business located at 9725 NW 117th Ave., Suite 200, Miami, Florida 33178. The entity was formed in 2021.

27.     Cano Health California Network, LP is a California limited partnership with its principal place of business located at 9725 NW 117th Ave., Suite 200, Miami, Florida 33178. The entity was formed in 2022.

28.     Cano Health Texas Network is an entity formed in Texas with its principal place of business located at 9725 NW 117th Ave., Suite 200, Miami, Florida 33178. The entity was formed in 2022.

29.     Cano Belen, LLC is a Florida limited liability company with its principal place of business located at 9725 NW 117th Ave., Suite 200, Miami, Florida 33178. Cano Belen, LLC was formed in 2019.

30.     Cano Health of Puerto Rico LLC is a Puerto Rico limited liability company with its principal place of business located at 268 Ponce de Leon Avenue, The Hato Rey Center Suite 1123, San Juan, Puerto Rico, 00918. Cano Health of Puerto Rico LLC was formed in 2021.

31.     Cano Dental is a trademark of Cano Health, LLC.

32.     See Exhibit 1 for subsidiaries of Cano Health, Inc.

33.     Upon information and belief, John Doe Entities 1–10 are various legal entities, the names and address of which are unknown at this time. Relator reserves the right to amend the Complaint to identify additional John Doe Entities that are discovered.

## V.    LEGAL FRAMEWORK

### A.    The False Claims Act

34.    The False Claims Act imposes civil liability upon any person who:

> (A)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B)    knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
> . . . .
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a).  The Affordable Care Act requires a person who has received an overpayment from the Government to report and return the overpayment within 60 days of identification, or the date that any corresponding cost report is due; and failure to report and return the overpayment is an obligation for purposes of the False Claims Act under 31 U.S.C. § 3729(a)(1)(G).  *See* 42 U.S.C. § 1320a-7k(d).

35.    For purposes of the FCA

> (1)    the terms "knowing" and "knowingly"
>> (A)    mean that a person, with respect to information – (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information; and
>>
>> (B)    require no proof of specific intent to defraud.  31 U.S.C. § 3729(b).

36.    Effective November 2, 2015 (the date of enactment of the Federal Civil Penalties Inflation Adjustment Act, Improvements Act of 2011, Public Law 114-74, sec. 701 ("2015 Amendments")), the penalties increased from a minimum-maximum per-claim penalty of $5,500

and $11,000 to $10,781 and $21,563.  The increased amounts apply to civil penalties assessed for violations occurring after November 2, 2015.  Violations that occurred on or before November 2, 2015 are subject to the previous penalty amounts.  On February 3, 2016, pursuant to the 2015 Amendments annual re-indexing of the FCA penalties for inflation, the civil penalties again increased to a minimum-maximum per-claim penalty of $10,957 and $21,916.  On January 19, 2018, the FCA penalties were again increased to a minimum-maximum per-claim penalty of $11,181 and $22,363.  In February 2019, the amounts were increased again to $11,463 and $22,927. 84 Fed. Reg. 2445, 2446 (Feb. 7, 2019). In 2020, these amounts were again increased to $11,665 and $23,331.  15 C.F.R. § 6.3 (2020); 85 Fed. Reg. 207, 208 (Jan. 3, 2020).  In 2021, these amounts were again increased to the amounts of $11,803 and $ 23,607. 86 Fed. Reg. 2005 (Jan. 6, 2021). In 2022 these amounts were again increased to the amounts of $12,537 and $25,076. 81 Fed. Reg. 2187 (Jan. 13, 2022).  In 2023, these amounts were again increased to the current amounts of $13,508 and $27,018 per claim.  88 Fed. Reg. 5776 (Jan. 30, 2023).

**B.    The Medicare Program**

37.    The Health Insurance for the Aged and Disabled Program, popularly known as the Medicare program, was created in 1965 as part of the Social Security Act to pay the costs of certain healthcare services for eligible individuals.   The Secretary of Health and Human Services ("HHS"), an agency of the United States whose activities, operations, and contracts are paid from federal funds, administers the Medicare program through the Centers for Medicare and Medicaid Services ("CMS"), a component of HHS.

38.    Medicare is a 100% federally subsidized health insurance system for eligible Americans, including those aged 65 and older, certain disabled people, and certain people with chronic diseases who elect coverage.   42 U.S.C. § 1395c; *see* 42 U.S.C. §§ 1395j-1395w.  To

11

participate in Medicare, a provider must sign and file a Provider Agreement with CMS promising compliance with applicable statutes, regulations, and guidance. 42 U.S.C. § 1395cc; 42 C.F.R. § 412.23(e)(1). Medicare service providers have a legal duty to familiarize themselves with Medicare's reimbursement rules, including those delineated in the Medicare Manuals. *Heckler v. Cmty. Health Serv. of Crawford Co., Inc.,* 467 U.S. 51, 64–65 (1984).

39.     By participating in the Medicare program, Cano Health is charged with actual notice and knowledge of the federal and state statutes, regulations, and rules applicable to the Medicare program, and has consented to compliance with all such statutes, regulations, and rules, including those governing reimbursement.

### C.     The Medicaid Program

40.     Medicaid is a joint federal-state program that pays for healthcare services for low-income individuals, including pregnant women, children, and parents and other caretaker relatives, as well as elderly and disabled individuals. As a result of the Affordable Care Act, each state had the option to expand eligibility for Medicaid beginning in calendar year 2014 to all nonelderly adults with income below 138 percent of the federal poverty guidelines.

41.     Medicaid is jointly funded by state and federal governments. The federal government's share of each state's Medicaid spending, known as the Federal Medical Assistance Percentage ("FMAP"), is based upon the state's per capita income compared to the national average. 42 U.S.C. § 1396d(b). Such share must be at least 50 percent, but no more than 83 percent, and historically has averaged about 57 percent. In other words, the federal government guarantees to match at least $1 in federal funds for every $1 any individual state spends on its Medicaid program.

42.     State Medicaid programs must comply with the minimum requirements set forth

in the federal Medicaid statute to qualify for federal funding. 42 U.S.C. § 1396a. In order to receive reimbursement from Medicaid, a provider must submit a signed claims form to the state's Medicaid program, certifying that the information on the form is "true, accurate, and complete." 42 C.F.R. § 455.18. The provider further certifies that it "understand[s] that payment of this claim will be from federal and state funds, and that any falsification, or concealment of a material fact, may be prosecuted under federal and state laws." *Id.*

43.     By participating in a state's Medicaid program, Defendants are charged with actual notice and knowledge of the federal and state statutes, regulations, and rules applicable to the Medicaid program, and has consented to compliance with all such statutes, regulations, and rules, including those governing reimbursement.

### D.     The Anti-Kickback Statute

44.     The Medicare and Medicaid Patient Protection Act a/k/a the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b ("AKS"), was enacted to address Congress's concerns that remuneration to those in positions to influence healthcare decisions will cause corruption in the industry and may result in providers rendering goods and services excessively expensive and/or medically unnecessary.

45.     The AKS prohibits, among other things, knowingly offering or providing remuneration for the purpose of inducing any person for referring, recommending, or arranging for the purchase of any good or service for which payment may be made, in whole or in part, under a government healthcare program. 42 U.S.C. § 1320a-7b(b) & (f).

46.     In particular, the AKS provides that:

> (2)     whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind to induce such person—

13

. . . .

> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal healthcare program,

> shall be guilty of a felony upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

*Id.* The AKS is violated if one purpose of the arrangement is to induce unlawful referrals, regardless if other legitimate purposes also exist.

47.    The AKS prohibits not only outright bribes, but *any and all forms of remuneration* by a healthcare provider to another the purpose of inducing patient referrals. While the remuneration may have other lawful purposes, so long as one of the purposes is to induce or influence, then AKS is violated.

48.    Pursuant to the ACA, a violation of the AKS constitutes a false or fraudulent claim for purposes of the False Claims Act. Pub. L. 111-148, § 6402(f)(1), 124 Stat. 119 (2010), codified at 42 U.S.C. § 1320-7b(g) (noting that a claim "that includes items or services resulting from a violation of the [Anti-Kickback Statute] constitutes a false or fraudulent claim" for purposes of the False Claims Act). Indeed, compliance with AKS is a precondition to participation in federally-funded healthcare programs and state Medicaid programs. Payments for reimbursement under both Medicare and Medicaid are conditioned on compliance with, among other things, the AKS.

**E.    The Anti-Inducement Statute**

49.    Similar to the AKS, the Anti-Inducement Statute (§ 1128A(a)(5) of the Social Security Act) ("AIS") explicitly prohibits, among other things, offering or providing remuneration for the purpose of influencing recipients to order or receive care from a particular provider, the payment of which may be made under Medicare. 42 U.S.C. § 1320a-7a(a)(5). Also referred to as

14

the "beneficiary inducement prohibition," this provision states:

> It is unlawful for any organization, or entity to "offer . . . or transfer remuneration to any individual eligible for [Medicare] benefits . . . that such [organization] knows or should know is likely to influence such individual to order or receive from a particular provider, practitioner, or supplier any item or service for which payment may be made."

*Id.* (emphasis added).   Violations may result in penalties of $10,000 per item or service provided, treble damages, repayment of amounts paid, and exclusion from federal programs. *Id.*

50.      The term "remuneration" is generally interpreted very broadly to encompass anything of value including, without limitation, transfers of items or services for free or for other than fair market value. *E.g.,* 42 U.S.C. §1320a-7a(i)(6).

51.      An unlawful inducement may be either direct or indirect.   In a 2002 Special Advisory Bulletin, the Office of Inspector General stated:

> [E]ven if a provider does not directly advertise or promote the availability of a benefit to beneficiaries, there may be indirect marketing or promotional efforts to informal channels of information dissemination, such as "word of mouth" promotion by practitioners or patient support groups.

Office of Inspector General, *Special Advisory Bulletin: Offering Gifts and Other Inducements to Beneficiaries* (August 2002) (emphasis added).   In addition, the OIG stated that "the provision of free goods or services to existing customers who have an ongoing relationship with a provider is likely to influence those customers' future purchases." *Id.* (emphasis added).

52.      Compliance with the AIS is a precondition to participation in federally-funded healthcare programs and state Medicaid programs, and payments for reimbursement under both Medicare and Medicaid are conditioned upon compliance with, among other things, the AIS.

**F.      The Prohibition on Offering and Providing Free Transportation Services**

53.      Under both the AKS and AIS, federal law prohibits healthcare providers from offering and providing free goods or services to induce Medicare beneficiaries to purchase, order,

or receive goods or services payable by a federal healthcare program.   42 U.S.C. § 1320a-7b; 42

U.S.C. § 1320a-7a.   Examples of unlawful inducements include, but are not limited to, offering

and providing free transportation services.

      54.    The Office of Inspector General has determined that free/discounted

transportation services implicate the AKS and AIS because they are likely to influence and induce

a Medicare beneficiary's initial or subsequent choice to obtain services, as well as influence the

beneficiary to choose one provider over another.   OIG Advisory Opinion No. 07-02; *see* HHS

OIG Advisory Opinion No. 00-7 ("Healthcare providers that offer free goods or services, such as

free transportation, to federal healthcare beneficiaries may be subject to civil monetary penalties

[under the Anti-Inducement Act].   .   .   .   Moreover, free transportation services may implicate

the criminal [A]nti-[K]ickback [S]tatute . . . .").   While federal law allows healthcare providers

to provide free/discounted local transportation to new patients, the "transportation cannot be used

as a recruiting tool."   81 Fed. Reg. 88368, 88382 (Dec. 7, 2016).

      55.    The free transportation services need not be directly advertised or marketed to be

unlawful; indirect "word of mouth" dissemination is sufficient.   Office of Inspector General,

*Special Advisory Bulletin: Offering Gifts and Other Inducements to Beneficiaries* (August 2002);

HHS OIG Advisory Opinion No. 07-02 ("The fact that the subsidized [transportation] services are

not advertised directly to patients is not a meaningful safeguard; the availability of the reduced

cost [transportation] services will be known to patients' physicians, who may serve as indirect

channels of information dissemination.").

      56.    While a safe harbor exception exists under the AKS for certain free/discounted

transportation services, certain conditions must be met for it to apply—namely, the transportation

cannot be publicly marketed or advertised by the healthcare provider.   42 C.F.R. § 1001.952(bb).

**G.** **Medicare Prescription Drug Coverage**

57.     Medicare beneficiaries may obtain prescription drug benefits in two ways. Beneficiaries who participate in traditional Medicare insurance for medical services (under Medicare Parts A and B) may enroll in a stand-alone drug plan that covers prescription drugs called Medicare Part D. *See* 42 C.F.R. § 423.30. This is known as a Prescription Drug Plan or "PDP."

58.     Alternatively, beneficiaries who participate in a Medicare Advantage plan (that is, a managed care plan under Medicare Part C) for their medical benefits may elect to add prescription drug coverage to the basic health plan that covers their medical benefits. This is known as a Medicare Advantage Prescription Drug Plan or "MA-PD." *See* 42 C.F.R. § 422.4(c) & § 423.4.

**H.** **Medicare Part C – Medicare Advantage Prescription Drug Plan**

59.     Medicare Part C creates a managed care option for beneficiaries. *See* 42 U.S.C. § 1395w-21 to § 1395w-29.

60.     CMS contracts with commercial insurance carriers, known as Medicare Advantage Organizations, to offer Medicare Advantage Plans under Medicare Part C. The Plans cover medical services, such as hospital and physician services that are eligible for traditional Medicare coverage, as well as supplemental benefits. *See* 42 C.F.R. § 422.100(c).

61.     Examples of Medicare Advantage Organizations that offer drug benefits as part of Medicare Advantage Plans in Georgia include but are not limited to: Humana, Blue Cross and Blue Shield of Georgia, Cigna-Healthspring, WellCare, and Aetna Medicare.

62.     Both types of prescription drug plans – PDP and MA-PD – must comply with the requirements of Medicare Part D, as described next. *See* 42 C.F.R. § 423.104.

I.     **Medicare Part D – Prescription Drug Benefit Plan**

63.     Part D of the Medicare Program became effective January 1, 2006. Part D was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, to provide prescription drug benefits for Medicare "beneficiaries," meaning individuals who are eligible to receive benefits under the Medicare Program.

64.     Medicare Part D is a voluntary insurance program that is subsidized by federal funds in the Medicare Prescription Drug Account. *See* 42 U.S.C. § 1395w-101; 42 C.F.R. §423.315(a).

65.     Private insurance companies known as Part D Sponsors contract with CMS to offer prescription drug benefit plans to Medicare beneficiaries. In Georgia, Aetna Medicare, Humana Insurance Company, Express Scripts Medicare, SilverScript, WellCare, UnitedHealthcare and others are Sponsors offering Part D prescription drug benefit plans.

66.     CMS pays monthly payments and subsidies from the Medicare Prescription Drug Account, an account within the Federal Supplementary Medical Insurance Trust Fund, to Part D Sponsors to fund the prescription drug benefit plans they sell. 42 C.F.R. §423.315(a).

67.     Part D Sponsors are regulated and subsidized by CMS pursuant to one-year, annually renewable contracts.

68.     Part D Sponsors frequently contract with Pharmacy Benefit Managers (PBMs) to administer their drug benefit plans. The PBMs typically process claims for payment submitted by pharmacies and beneficiaries, form pharmacy networks, perform audits, and conduct other plan management activities under contracts with Part D Sponsors.

69.     Part D Sponsors (and PBMs on behalf of Part D Sponsors) enter into reimbursement agreements with pharmacies (such as Guardian) that provide covered drugs and

supplies to the Medicare beneficiaries enrolled in the prescription drug benefit plans they sponsor.

70.     Generally, when a pharmacy dispenses drugs or supplies to a Medicare beneficiary, the pharmacy collects a portion of the cost from the beneficiary (e.g., a resident of an assisted living community or personal care home) and submits a claim electronically to the beneficiary's Part D Sponsor, its PBM, or to the Medicare Advantage Prescription Drug Plan, all of which are Medicare contractors authorized by CMS to administer drug plans for beneficiaries.

71.     For covered drugs and supplies, the pharmacy receives reimbursement from the Medicare contractor for the portion of the drug cost not paid for by the beneficiary.   The reimbursement amount is negotiated and set forth in the reimbursement agreement between the pharmacy and the Medicare contractor. 57.

72.     As to each such pharmacy claim, the Part D Sponsor (or other contractor) submits to CMS an electronic statement called a Prescription Drug Event, setting forth information regarding the prescription claim, including the pharmacy that dispensed the drug, the prescriber of the drug, the quantity dispensed, the amount that was paid to the pharmacy, and whether the drug is covered under the Medicare Part D benefit. *See* 42 C.F.R. § 423.322.

73.     CMS relies upon the Prescription Drug Event data and other factors in an annual reconciliation process to determine the payment amounts made to the Part D Sponsor, and CMS recoups or pays additional funds to the Sponsor as a result of the Prescription Drug Event data.

74.     Claims for payment submitted by a pharmacy to the patient's Medicare prescription drug plan thus are "claims" within the meaning of the False Claims Act.   They are requests for money made to a Government contractor, the money is to be spent or used to advance a Government program (that is, the Medicare program), and federal funds are used to make the payment to the pharmacy and to reimburse the Government contractor.

75.     In order to receive Part D funds from CMS, Part D sponsors and their contracted pharmacies are required to comply with the Anti-Kickback Statute and all applicable federal laws, regulations, and CMS instructions.

76.     By statute, all contracts between a Part D sponsor and HHS must include a provision whereby the Part D sponsor agrees to comply with the applicable requirements of the Part D program as well as the terms and conditions of payment governing the Part D program. 42 U.S.C. § 1395w-112.

77.     Part D sponsors must also certify in their contracts with HHS that they will agree to comply with all federal laws and regulations designed to prevent fraud, waste, and abuse, including the FCA.   42 C.F.R. § 423.505(h)(1).

78.     CMS regulations further require all contracts between Part D Sponsors and pharmacies (such as Guardian) to contain language obligating the pharmacies to comply with all applicable federal laws including the Anti-Kickback Statute and applicable regulations and CMS instructions. *See* 42 C.F.R. § 423.505(i)(4)(iv).

79.     Compliance with the Anti-Kickback Statute thus is a material and essential condition of payment for prescription drug medications and supplies dispensed by pharmacies to Medicare beneficiaries.

80.     The Medicare Program and Medicare contractors such as Medicare Advantage Organizations and Part D Sponsors are collectively referred to as "Medicare" in this Complaint.

## VI.     FACTUAL ALLEGATIONS

81.     Cano Health has implemented illegal kickback and inducement schemes in order to solicit referrals and increase enrollments of Medicare/Medicaid beneficiaries at its centers— resulting in Government paying for healthcare services that are tainted by these illegal kickbacks

and inducements.

82.     In particular, and as more fully outlined below, since at least May 2023 and, upon

information and belief, since as early as 2017, Cano Health has defrauded the Government by:

    (a)    engaging in illegal kickback arrangements with third party marketing/sales agents and entities (*i.e.*, the John Doe Entities)— providing them cash and commission payments or engaging in co-marketing in exchange for referring their Medicare/Medicaid beneficiaries to enroll at Cano Health;

    (b)    improperly advertising, offering, and providing free transportation to Medicare/Medicaid beneficiaries to illegally induce them to enroll at Cano Health; and

    (c)    improperly advertising, offering, and providing free medical services and other services such as labs and X-ray to Medicare/Medicaid beneficiaries to illegally induce them to enroll at Cano Health.

83.     Cano Health knowingly and purposefully implemented these fraudulent practices

so as to target, induce, and exploit vulnerable elderly Medicare beneficiaries (many of whom are

disabled and low-income) to become its patients—all to illegally increase enrollments at Cano

Health at the expense of the Government.

**A.     Cano Health Offered Co-Marketing with Third Parties to Induce Referrals of Medicare/Medicaid Beneficiaries**

84.     Since at least May 2023 (and upon information and belief, since as early as 2017),

Cano Health has been engaging in illegal kickback arrangements with third party marketing/sales

agents and entities (*i.e.*, the John Doe Entities)—providing them cash and commission payments

in exchange for co-marketing or referring their Medicare/Medicaid beneficiaries to enroll at Cano

Health.

85.     The fraudulent scheme was explained to Mr. Stinson during a phone conversation

with Mr. Keeven, an employee of Cano Health, on May 15, 2023, which was a recorded call.

86.     Cano Health keeps track of referring agents and agents of record via CRM.

87.     In addition, upon information and belief, Cano Health has an unlicensed outreach team.

88.     Cano Health is aware that it may be engaging in illegal kickback arrangements as it provided in a Form 10K filing that "[w]e enter into several arrangements that could potentially implicate the Anti-Kickback Statute if requisite intent was present." Form 10K dated March 15, 2023.

89.     Upon information and belief, Cano Health admitted to engaging in illegal kickback arrangements in a Form 10K. "During 2019, the Company entered into a dental service agreement with Care Dental Group, LLC ('Belen Dental'), whereby the Company **[Cano Health] agreed to pay Belen Dental $15 per member per month, for each Medicare Advantage ('MA') patient that is identified by the Company on a monthly enrollment roster to receive care** at the legacy Belen Medical Centers."[5] (Emphasis added.)

90.     Upon information and belief, physicians referred Medicare/Medicaid beneficiaries to Cano Health illegally in violation of the Stark law. Specifically, upon information and belief, an executive of Cano Health referred Medicare/Medicaid beneficiaries to his wife who is a dentist.

91.     Cano Health's kickback arrangements constitute a violation of the AKS. Cano Health's unlawful kickbacks tainted all services and care provided to the patients that were improperly referred to Cano Health. By billing and/or receiving money from the Government for providing care to those patients, Cano Health has violated the False Claims Act.

---

[5] https://www.sec.gov/Archives/edgar/data/1800682/000180068222000010/cano-20211231.htm (last visited June 14, 2023).

**B.**  **Cano Health Offered and Provided Free Transportation to Medicare Beneficiaries to Illegally Induce Them to Enroll at Cano Health**

92.     Since at least May 2023 (and upon information and belief, since as early as 2017), Cano Health has been improperly advertising, offering, and providing free transportation to Medicare beneficiaries to illegally induce them to enroll at Cano Health.

93.     In particular, Cano Health has a corporate wide program in effect where it offers and provides free transportation to current and potential patients, to and from doctor's appointments.

94.     Cano Health explained the free transportation marketing and advertisement conduct during a phone call with Mr. Stinson.   For example, on the call between Mr. Stinson and Michael Keeven, Mr. Keeven explained:

> We also offer transportation to our members to and from our facilities, whether they need to come to see the doctor or come for labs or X-rays, or enjoy a session in our wellness centers or they need to see the dentist, we'll get them there and back.

> We actually own and operate our own vehicles.

> And obviously the drivers are Cano associates and we know that most of the Medicare Advantage programs certainly offer transportation, but we know that they use a third party provider and sometimes it's very hard on the members.

> So that's why we provide the transportation to and from our centers.

> Once again, that is a courtesy service.

> And we, you know, there's no charge to our members.

95.     In addition, Cano Health publicly markets and advertises its free transportation to prospective patients (who are all Medicare/Medicaid beneficiaries) for the sole purpose of inducing them to choose to receive care at a Cano Health facility (rather than elsewhere).

96.     Cano Health advertised on its website[6] its free transportation program, stating:

> Need a lift? As a Medicare Advantage patient, we've got you covered.
> We know that getting and staying healthy can be difficult. We want to make
> it as easy as possible for you to access care – and we're not willing to let
> transportation get in the way.
>
> Our friendly drivers will pick you up, take you to your medical center, and
> then bring you back home – all in the comfort of our specialized vehicles.
> That's the Cano way.
>
> So you can relax. Need to see your doctor? Want to participate in a
> wellness activity? We'll get you there – and back.

97.     One purpose of Cano Health's free transportation program is to induce
Medicare/Medicaid beneficiaries to enroll at Cano Health for care. Cano Health specifically
advertised, marketed, offered and provided its free transportation to current and prospective patients
to induce them to select Cano Health for care over other providers.

98.     By offering and providing free transportation, Cano Health violated and continues
to violate the AKS and AIS, because the services influenced and induced (and continue to influence
and induce) Medicare/Medicaid beneficiaries into choosing to receive care at Cano Health rather
than elsewhere.     That the free transportation was publicly marketed and advertised renders the
service outside the safe harbor exception. As a result, Cano Health's unlawful inducements tainted
all services and care provided to those patients.    By billing and/or receiving money from the
Government for providing care to those patients, Cano Health has violated the False Claims Act.

**C.     Cano Health Offered and Provided Free Medical Services and Other Services
to Medicare Beneficiaries to Illegally Induce Them to Enroll at Cano Health**

99.     Since at least May 2023 (and upon information and belief, since as early as 2017),
Cano Health has been improperly advertising, offering, and providing free medical services and
other services like labs, X-ray, and ultrasounds.

---

[6] https://canohealth.com/medical/transportation/ (last visited Jan. 27, 2023).

100.    Cano Health explained the free medical services during a phone call with Mr. Stinson.   For example, Mr. Keeven explained:

> We also not only produce blood labs in our facilities, but most of our facilities also have X-ray and ultrasound, which once again we provide to our members at no cost.

101.    On the same call, Mr. Keeven explained free acupuncture in certain locations:

> So at times we'll deploy a nurse practitioner out to their homes.  And then a few facilities in the state of Florida also provide acupuncture.  Just a few of them, but it is one of those courtesy services we provide to our members. So all those services are provided to all of our members as a courtesy and there's no charge.

102.    Cano Health explained the free delivery of prescription drugs to the patient.  On the call between Mr. Stinson and Michael Keeven, Mr. Keeven explained:

> There's some facilities in all of our facilities in Florida have pharmacy.  So if your member wants their prescription drugs filled through Cano Health, we'll have them delivered directly to their homes.

103.    Mr. Keeven disclosed additional services that Cano Health offers:

(A)   Wellness centers at most of Cano Heath's facilities;

(B)   numerous educational and nutritional courses;

(C)   events, such as birthday parties, holiday parties, and weddings;

(D)   social services to help with Medicare applications, Medicaid applications, and food stamps.

104.    Cano Health runs infomercials in part of Florida for physiotherapy which attracts about 450 leads per month.   The patient can pay out of pocket or join a Medical Advantage program, and Cano Health provides the physiotherapy as a "courtesy."

105.    Upon information and belief, Cano Health offers Ozone injections and Sarapin injections.   The Sarapin injections, and possibly the Ozone injections, is a courtesy service.[7]  **Mr.**

---

[7] Upon information and belief, Sarapin and Ozone injections are not covered by

**Keeven explained that there's no cost to members as long as they choose Cano Health as their primary care physician.**

106.    Cano Health offers free delivery of prescriptions to Medicare/Medicaid beneficiaries from its pharmacies.  Cano Health's website contains:

> ## Prescription Delivery
>
> We fill prescriptions daily at our conveniently located pharmacies. We'll also deliver your prescriptions at no cost to you. We'll even transfer your existing prescriptions from other pharmacies or call your doctor for additional refills.

https://canohealth.com/pharmacy/ (last visited 6/15/2023).  Mr. Keeven confirmed this free service on the phone call with Mr. Stinson.

107.    Upon information and belief, Cano Health works with its Medicare/Medicaid beneficiaries to provide below market cost of dentistry care below to induce customers to use Cano Health's facilities.

108.    One purpose of Cano Health's free medical services and other services is to induce Medicare/Medicaid beneficiaries to enroll at Cano Health for care. Cano Health specifically advertised, marketed, offered and provided its free services or discounted services to current and prospective patients to induce them to select Cano Health for care over other providers.

109.    By offering and providing free transportation, Cano Health violated and continues

---

Medicare/Medicaid.  See e.g., https://www.medicare.org/articles/does-medicare-cover-prolotherapy/#:~:text=Medicare%20Coverage%20for%20Prolotherapy,provide%20coverage%20for%20its%20costs (last visited July 24, 2023) ("Because prolotherapy is considered alternative or complementary medicine, Medicare benefits do not provide coverage for its costs."). "Prolotherapy is an injection treatment used to relieve pain." https://my.clevelandclinic.org/health/treatments/22426-prolotherapy (last visited July 24, 2023).

to violate the AKS and AIS, because the services influenced and induced (and continue to influence and induce) Medicare/Medicaid beneficiaries into choosing to receive care at Cano Health rather than elsewhere.   As a result, Cano Health's unlawful inducements tainted all services and care provided to those patients.   By billing and/or receiving money from the Government for providing care to those patients, Cano Health has violated the False Claims Act.

*          *          *

110.   Cano Health explained the free transportation and services in its Form 10K filed on March 15, 2023.  The filings says:

> **Patients:** At our owned medical centers, our members are offered services in modern, clean, contemporary facilities, with same or next day appointments, integrated virtual care, wellness services, ancillary services (such as physiotherapy), home services, transportation, telemedicine and a 24/7 urgency line, **all without additional cost to them**.  This broad-based care model is critical to our success in delivering care to members of low-income communities, including large minority and immigrant populations, with complex care needs, many of whom previously had very limited or no access to quality healthcare.

(Emphasis added.)

111.   Cano Health explained in the same filing that the services could be found to be illegal.

> Although we endeavor to operate within the confines of the CMP Statute with respect to beneficiary inducements, we may not always satisfy all of the elements of applicable safe harbors and, as such, **could be subjected to scrutiny or investigation** or other actions by government enforcement authorities and potential whistleblowers **for practices such as complimentary transportation, modest meals for patients, wellness programs, our "Cano Life" program or other patient engagement activities.**

(Emphasis added.)

112.   In sum, Cano Health has defrauded the Government by billing and/or receiving money for healthcare services that were tainted as a result of the above-described kickback and

27

inducement schemes.   Cano Health's fraudulent conduct was material to the Government's payment decision; in other words, had the Government known about the unlawful kickbacks and inducements, it would not have paid Cano Health for providing healthcare services to those Medicare/Medicaid beneficiaries.

113.   The damages incurred by the Government as a result of Cano Health's fraudulent scheme are substantial.   Because Cano Health improperly procured and enrolled Medicare/Medicaid beneficiaries as patients using the illegal kickback and inducement schemes described herein, all services and care provided to those patients are tainted and not lawfully payable by the Government.   Therefore, a significant portion of Cano Health's Medicare/Medicaid revenue from 2017 to the present is tainted as a result of the illegal kickback and inducements schemes.   For reference, Cano Health's annual revenue was $2.7 billion in 2022. Much of this revenue, from 2017 to the present, is at issue in this FCA case.   Upon information and belief, the fraud continues still today—and will no doubt continue to grow in scope as Cano Health continues to grow and open more new centers throughout the country.

## COUNT ONE
## VIOLATION OF THE FALSE CLAIMS
## ACT 31 U.S.C. § 3729(a)(1)(A)

114.   Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

115.   As set forth above, since at least May 2023 (and upon information and belief, as early as 2017), Cano Health knowingly presented false or fraudulent claims for payment, or knowingly caused false or fraudulent claims for payment to be presented, to officials of the United States Government in violation of 31 U.S.C. § 3729(a)(1)(A).   Cano Health knowingly and falsely certified that its claims for reimbursement complied with all applicable laws and

regulations.

116.    By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the United States suffered actual damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT TWO
### VIOLATION OF THE FALSE CLAIMS
### ACT 31 U.S.C. § 3729(a)(1)(B)

117.    Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

118.    As set forth above, since at least May 2023 (and upon information and belief, as early as 2017), Cano Health knowingly and falsely certified that its claims for reimbursement complied with all applicable laws and regulations.

119.    By virtue of the false or fraudulent certifications submitted or caused to be submitted by Defendants, the United States suffered actual damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT THREE
### VIOLATION OF THE FALSE CLAIMS
### ACT 31 U.S.C. 3729(a)(1)(C)

120.    Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

121.    As set forth above, since at least May 2023 (and upon information and belief, as early as 2017), Cano Health knowingly conspired to commit a violation of the False Claims Act in violation of 31 U.S.C. §3729(a)(1)(C).

122.    By virtue of said conspiracy, the United States suffered actual damages and

therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT FOUR
## VIOLATION OF THE FALSE CLAIM
## ACT 31 U.S.C. 3729(a)(1)(G)

123.    Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

124.    As set forth above, since at least May 2023 (and upon information and belief, as early as 2017), Cano Health knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government, in violation of 31 U.S.C. § 3729(a)(1)(G).

125.    The Affordable Care Act requires a person who has received an overpayment of Medicare or Medicaid to report and return the overpayment within 60 days of identification or the date of any corresponding cost report is due, and failure to report and return the overpayment is an obligation for purposes of the False Claims Act under 31 U.S.C. § 3729(a)(1)(G). *See* 42 U.S.C. § 1320a-7k(d).

126.    By virtue of Cano Health's violations of 31 U.S.C. § 3729(a)(1)(G), the United States suffered actual damages and is therefore entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT FIVE
## VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
## Fla. Stat. § 68.082(2)(a)

127.    Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

128.    As set forth above, since at least May 2023 (and upon information and belief, as early as 2017), Cano Health knowingly presented or caused to be presented to the State of Florida false or fraudulent claims for payment or approval in violation of Fla. Stat. §68.082(2)(a).

129.    By virtue of the false or fraudulent claims submitted or caused to be submitted by Defendant, the State of Florida suffered actual damages and therefore is entitled to multiple damages under the Florida False Claims Act, to be determined at trial, plus a civil penalty for each violation.

**COUNT SIX**
**VIOLATION OF THE FLORIDA FALSE CLAIMS ACT**
**FLA. STAT. § 68.082(2)(b)**

130.    Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

131.    As set forth above, since at least May 2023 (and upon information and belief, as early as 2017), Cano Health knowingly made, used, or caused to be made or used false records or statements material to a false or fraudulent claim submitted to the State of Florida in violation of Fla. Stat. §68.082(2)(b).

132.    By virtue of the false or fraudulent claims submitted or caused to be submitted by Defendant, the State of Florida suffered actual damages and therefore is entitled to multiple damages under the Florida False Claims Act, to be determined at trial, plus a civil penalty for each violation.

**COUNT SEVEN**
**VIOLATION OF THE FLORIDA FALSE CLAIMS ACT**
**FLA. STAT. § 68.082(2)(c)**

133.    Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

134.    As set forth above, since at least May 2023 (and upon information and belief, as early as 2017), Cano Health knowingly conspired together to commit violations of the Florida False Claims Act in violation of Fla. Stat. §68.082(2)(c).

135.    By virtue of the false or fraudulent claims submitted or caused to be submitted by Defendants, the State of Florida suffered actual damages and therefore is entitled to multiple damages under the Florida False Claims Act, to be determined at trial, plus a civil penalty for each violation.

**COUNT EIGHT**
**VIOLATION OF THE ILLINOIS WHISTLEBLOWER**
**REWARD AND PROTECTION ACT**
**740 ILL. COMP. STAT. § 175/3(a)(1)(A)**

136.    Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

137.    As set forth above, since at least May 2023 (and upon information and belief, as early as 2022), Cano Health knowingly presented or caused to be presented to the State of Illinois false or fraudulent claims for payment or approval in violation of 740 Ill. Comp. Stat. §175/3(a)(1)(A).

138.    By virtue of the false or fraudulent claims submitted or caused to be submitted by Defendants, the State of Illinois suffered actual damages and therefore is entitled to treble damages under the Illinois Whistleblower and Protection Act, to be determined at trial, plus a civil penalty for each violation.

**COUNT NINE**
**VIOLATION OF THE ILLINOIS WHISTLEBLOWER**
**REWARD AND PROTECTION ACT**
**740 ILL. COMP. STAT. § 175/3(a)(1)(B)**

139.    Relator incorporates by reference the allegations set forth in the foregoing

paragraphs as though fully set forth herein.

140.    As set forth above, since at least May 2023 (and upon information and belief, as early as 2022), Cano Health knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims submitted to the State of Illinois in violation of 740 Ill. Comp. Stat. §175/3(a)(1)(B).

141.    By virtue of the false or fraudulent records or statements submitted or caused to be submitted by Defendants, the State of Illinois suffered actual damages and therefore is entitled to treble damages under the Illinois Whistleblower and Protection Act, to be determined at trial, plus a civil penalty for each violation.

### COUNT TEN
### VIOLATION OF THE ILLINOIS WHISTLEBLOWER
### REWARD AND PROTECTION ACT
### 740 ILL. COMP. STAT. § 175/3(a)(1)(C)

142.    Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

143.    As set forth above, since at least May 2023 (and upon information and belief, as early as 2012), Cano Health knowingly conspired with others to commit violations of the Illinois Whistleblower and Protection Act in violation of 740 Ill. Comp. Stat. §175/3(a)(1)(C).

144.    By virtue of said conspiracy, the State of Illinois suffered actual damages and therefore is entitled to treble damages under the Illinois Whistleblower and Protection Act, to be determined at trial, plus a civil penalty for each violation.

### COUNT ELEVEN
### VIOLATION OF THE TEXAS MEDICAID FRAUD PREVENTION
### LAW TEX. HUM. RES. CODE § 36.002(1)

145.    Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

146.     As set forth above, since at least May 2023 (and upon information and belief, as early as 2020), Cano Health knowingly presented or caused to be presented to the State of Texas false or fraudulent claims for payment or approval in violation of Tex. Hum. Res. Code § 36.002(1).

147.     By virtue of the false or fraudulent claims submitted or caused to be submitted by Defendants, the State of Texas suffered actual damages and therefore is entitled to treble damages under the Texas Medicaid Fraud Prevention Law, to be determined at trial, plus a civil penalty for each violation.

## COUNT TWELVE
### VIOLATION OF THE TEXAS MEDICAID FRAUD PREVENTION LAW TEX. HUM. RES. CODE § 36.002(4)(A)

148.     Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

149.     As set forth above, since at least May 2023 (and upon information and belief, as early as 2020), Cano Health knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims submitted to the State of Texas in violation of Tex. Hum. Res. Code § 36.002(4)(A).

150.     By virtue of the false records or statements submitted or caused to be submitted by Defendants, the State of Texas suffered actual damages and therefore is entitled to treble damages under the Texas Medicaid Fraud Prevention Law, to be determined at trial, plus a civil penalty for each violation.

## COUNT THIRTEEN
### VIOLATION OF THE TEXAS MEDICAID FRAUD PREVENTION LAW TEX. HUM. RES. CODE § 36.002(9)

151.     Relator incorporates by reference the allegations set forth in the foregoing

paragraphs as though fully set forth herein.

152.     As set forth above, since at least May 2023 (and upon information and belief, as early as 2020), Cano Health knowingly conspired with others to commit violations of the Texas Medicaid Fraud Prevention Law in violation of Tex. Hum. Res. Code § 36.002(9).

153.     By virtue of said conspiracy, the State of Texas suffered actual damages and therefore is entitled to treble damages under the Texas Medicaid Fraud Prevention Law, to be determined at trial, plus a civil penalty for each violation.

**COUNT FOURTEEN**
**VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT**
**CAL. GOV'T CODE § 12651(A)(1)**

154.     Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

155.     As set forth above, since at least May 2023 (and upon information and belief, as early as 2021), Cano Health knowingly presented or caused to be presented to the State of California false or fraudulent claims for payment or approval in violation of Cal. Gov't Code §12651(A)(1).

156.     By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the State of California suffered actual damages and therefore is entitled to multiple damages under the California False Claims Act, to be determined at trial, plus a civil penalty for each violation.

**COUNT FIFTEEN**
**VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT**
**CAL. GOV'T CODE § 12651(A)(2)**

157.     Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

158.     As set forth above, since at least May 2023 (and upon information and belief, as early as 2021), Cano Health knowingly made, used, or caused to be made or used false records or statements material to a false or fraudulent claim submitted to the State of California in violation of in violation of Cal. Gov't Code §12651(A)(2).

159.     By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the State of California suffered actual damages and therefore is entitled to multiple damages under the California False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT SIXTEEN
### VIOLATION OF THE NEVADA FALSE CLAIMS ACT
### NEV. REV. STAT. § 357.040(1)(a)

160.     Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

161.     As set forth above, since at least May 2023 (and upon information and belief, as early as 2022), Cano Health knowingly presented or caused to be presented to the State of Nevada false or fraudulent claims for payment or approval in violation of Nev. Rev. Stat. §357.040(1)(a).

162.     By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the State of Nevada suffered actual damages and therefore is entitled to multiple damages under the Nevada False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT SEVENTEEN
### VIOLATION OF THE NEVADA FALSE CLAIMS ACT
### NEV. REV. STAT. § 357.040(1)(b)

163.     Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

164.     As set forth above, since at least May 2023 (and upon information and belief, as early as 2022), Cano Health knowingly made, used, or caused to be made or used false records or statements material to a false or fraudulent claim submitted to the State of Nevada in violation of Nev. Rev. Stat. §357.040(1)(b).

165.     By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the State of Nevada suffered actual damages and therefore is entitled to multiple damages under the Nevada False Claims Act, to be determined at trial, plus a civil penalty for each violation.

**COUNT EIGHTEEN**
**VIOLATION OF THE NEW JERSEY FALSE CLAIMS ACT**
**N.J. STAT. ANN. § 2A:32C-3(a)**

166.     Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

167.     As set forth above, since at least May 2023 (and upon information and belief, as early as 2020), Cano Health knowingly presented or caused to be presented to the State of New Jersey false or fraudulent claims for payment or approval in violation of N.J. Stat. Ann. §2A:32C-3(a).

168.     By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the State of New Jersey suffered actual damages and therefore is entitled to multiple damages under the New Jersey False Claims Act, to be determined at trial, plus a civil penalty for each violation.

**COUNT NINTEEN**
**VIOLATION OF THE NEW JERSEY FALSE CLAIMS ACT**
**N.J. STAT. ANN. § 2A:32C-3(b)**

169.     Relator incorporates by reference the allegations set forth in the foregoing

37

paragraphs as though fully set forth herein.

170.     As set forth above, since at least May 2023 (and upon information and belief, as early as 2020), Cano Health knowingly made, used, or caused to be made or used false records or statements material to a false or fraudulent claim submitted to the State of New Jersey in violation of N.J. Stat. Ann. §2A:32C-3(b).

171.     By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the State of New Jersey suffered actual damages and therefore is entitled to multiple damages under the New Jersey False Claims Act, to be determined at trial, plus a civil penalty for each violation.

**COUNT TWENTY**
**VIOLATION OF THE NEW MEXICO MEDICAID FALSE CLAIMS ACT**
**N.M. STAT. ANN. § 27-14-4(A)**

172.     Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

173.     As set forth above, since at least May 2023 (and upon information and belief, as early as 2021), Cano Health knowingly presented or caused to be presented to the State of New Mexico false or fraudulent claims for payment or approval in violation of N.M. Stat. Ann. §27-14-4(A).

174.     By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the State of New Mexico suffered actual damages and therefore is entitled to multiple damages under the New Mexico Medicaid False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT TWENTY-ONE
## VIOLATION OF THE NEW MEXICO MEDICAID FALSE CLAIMS ACT
## N.M. STAT. ANN. § 27-14-4(C)

175.    Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

176.    As set forth above, since at least May 2023 (and upon information and belief, as early as 2021), Cano Health knowingly made, used, or caused to be made or used false records or statements material to a false or fraudulent claim submitted to the State of New Mexico in violation of N.M. Stat. Ann. §27-14-4(C).

177.    By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the State of New Mexico suffered actual damages and therefore is entitled to multiple damages under the New Mexico Medicaid False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT TWENTY-TWO
## VIOLATION OF THE NEW YORK FALSE CLAIMS ACT
## N.Y. STATE FIN. LAW § 189(1)(a)

178.    Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

179.    As set forth above, since at least May 2023 (and upon information and belief, as early as 2022), Cano Health knowingly presented or caused to be presented to the State of New York false or fraudulent claims for payment or approval in violation of N.Y. State Fin. Law §189(1)(a).

180.    By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the State of New York suffered actual damages and therefore is entitled to multiple damages under the New York False Claims Act, to be determined at trial, plus a civil penalty for

each violation.

## COUNT TWENT-THREE
## VIOLATION OF THE NEW YORK FALSE CLAIMS ACT
### N.Y. STATE FIN. LAW § 189(1)(b)

181. Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

182. As set forth above, since at least May 2023 (and upon information and belief, as early as 2022), Cano Health knowingly made, used, or caused to be made or used false records or statements material to a false or fraudulent claim submitted to the State of New York in violation of N.Y. State Fin. Law §189(1)(b).

183. By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the State of New York suffered actual damages and therefore is entitled to multiple damages under the New York False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT TWENTY-FOUR
## VIOLATION OF THE PUERTO RICO FALSE CLAIMS ACT
### PUERTO RICO CODE ANN. § 3.07A(1)

184. Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

185. As set forth above, since at least May 2023 (and upon information and belief, as early as 2021), Cano Health knowingly presented or caused to be presented to the Territory of Puerto Rico false or fraudulent claims for payment or approval in violation of Puerto Rico Code § 3.07A(1).

186. By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the Territory of Puerto Rico suffered actual damages and therefore is entitled to

multiple damages under the Puerto Rico False Claims Act, to be determined at trial, plus a civil penalty for each violation.

**COUNT TWENTY-FIVE**
**VIOLATION OF THE PUERTO RICO FALSE CLAIMS ACT**
**PUERTO RICO CODE ANN. § 3.07A(2)**

187.     Relator incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

188.     As set forth above, since at least May 2023 (and upon information and belief, as early as 2021), Cano Health knowingly made, used, or caused to be made or used false records or statements material to a false or fraudulent claim submitted to the Territory of Puerto Rico in violation of Puerto Rico Code § 3.07A(2).

189.     By virtue of the false or fraudulent claims submitted or caused to be submitted by Cano Health, the Territory of Puerto Rico suffered actual damages and therefore is entitled to multiple damages under the Puerto Rico False Claims Act, to be determined at trial, plus a civil penalty for each violation.

**PRAYER FOR RELIEF**

WHEREFORE, the Government and Relator demand that judgment be entered against Defendants and in favor of the Relator and the Government as follows:

On Count One through Count Twenty-Five under the federal False Claims Act (and amended and equivalent state statutes), for the amount of the United States' and States' damages, multiplied by three as required by law, and such civil penalties as are permitted or required by law; the maximum share amount allowed pursuant to 31 U.S.C. § 3730(d) and applicable state laws; all costs and expenses of this action, including attorney fees, expenses and costs as permitted by 31 U.S.C. § 3730(d) and applicable state laws; and all such other relief as may be just and proper.

41

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: October 11, 2023

Respectfully submitted,

Kimberly A. Corkill
CORKILL LAW FIRM, PLLC
7 N. Coyle Street
Pensacola, Florida 32502
Phone:  (850) 375-3475
kimberlyatlaw@gmail.com

Joseph M. Callow, Jr.*
Gregory M. Utter*
CALLOW + UTTER LAW GROUP
8044 Montgomery Road, Suite 170
Cincinnati, Ohio 45236
Phone: (513) 378-0141
jcallow@callowandutter.com
gmutter@callowandutter.com

Joel D. Hesch*
THE HESCH FIRM, LLC
3540 Ridgecroft Dr.
Lynchburg, Virginia  24503
Phone: (434) 229-8677
joel@howtoreportfraud.com

*Attorneys for Relator, Joseph Stinson*
*\* Pro hac vice applications forthcoming*